## Noble, et al. v. Clarke, etc.

(Decided May 4, 1926.)

Appeal from Jefferson Circuit Court
(Common Pleas Fourth Division).

1. Auctions and Auctioneers—Statement in Advertisement of Auction Sale that "Purchaser Makes Price; Owner Makes Deed," Held Not a Guaranty that Good Deed Would be Made.—Statement in advertisement for sale of lots at public auction, that "purchaser makes the price; owner makes the deed," held a mere slogan to confirm sale as one in which highest bid would be accepted, and is not a guaranty that a good and sufficient deed will be made.

2. Auctions and Auctioneers—Purchaser at Auction Paying Vendor, Indorsing Check to Auctioneer as Payment for Services, Cannot Recover Money from Auctioneer on Vendor's Failure to Convey Good Title.—Where purchaser of lot at auction made first payment to vendor, who indorsed check to auctioneer as payment for his services, auctioneer is not liable to purchaser as a stakeholder for money paid, though vendor failed to convey good title.

3. Pleading—Refusal to Allow Amendment, After Trial on Petition to Recover Money Against Auctioneer as Stakeholder so as to Allege Fraudulent Appropriation of Money, Held Not an Abuse of Discretion.—Where case had been tried on theory that auctioneer guaranteed title to lots purchased by plaintiff, and that he was stakeholder of purchase money paid, refusal to allow further time to amend petition so as to allege fraud by auctioneer in appropriating the money which amendment did not conform to the proof, was not an abuse of discretion.

GIFFORD & STEINFELD for appellants.

L. R. CURTIS and JOHN B. BASKIN for appellee.

Opinion of the Court by Judge Clay—Affirming.

In the month of January, 1922, R. S. Brooke contracted with D. C. Clarke to subdivide, develop, advertise and sell a tract of land in Clarke county, Indiana. As compensation for his services Clarke was to receive in cash at the close of the sale 15% of the gross amount of the purchase price. The terms of the sale were 15% cash, 18 1-3% on March 1st, and the balance in three equal installments, payable in one, two and three years. It was further agreed that the land should be sold at public auction and that the highest price obtainable would be confirmed. The sale was to take place within sixty days, and all expenses were to be borne by Clarke. The sale took place on January 25, 1922. One of the tracts was purchased by J. M. Noble and Charles Reisch, Jr. At the conclusion of the sale the purchasers entered into a written contract with the owners of the property. Desiring to make the first payment on the property Mr. Noble wanted to know to whom the check should be made payable. One of Clarke's clerks told him to make it payable to Mr. Brooke. Thereupon he made out a check to Mr. Brooke for the sum of $602.95, which was 15% of the purchase price. The check was then indorsed by Brooke and delivered to Clarke's agent in payment of Clarke's commission as provided by the terms of sale. It subsequently developed that the land purchased was covered by mortgages in excess of the purchase price, and that the owners were unable to convey a good title. Later on, Brooke was adjudged a bankrupt, and after a fruitless effort to collect the claim Noble and Reisch brought suit to recover against Clarke. At the conclusion of the evidence the court directed a verdict in favor of the defendant, and the plaintiffs have appealed.

The case proceeds on the theory that Clarke guaranteed the title, and the money having been paid to him as a deposit, he was liable as a stakeholder because the vendors failed to complete the sale.

The only basis for the claim of guaranty of title is the following excerpt from the advertisement of sale:

"Our Fixed Guarantee.

"Those attending the sale are assured of the fact that they are face to face with a genuine auction. We do an exclusive auction business. We have never taken a piece of property down after it was once

placed under the hammer without selling it. We sell no land privately. We have never invited the public to a try-out sale and do not propose to start it now after twelve years of experience. The purchaser makes the price. The owner makes the deed.''

It not infrequently happens that the owners of property being sold at public auction become dissatisfied with the bidding and withdraw the property from sale. The only purpose of the advertisement was to make it known to those attending the sale that the property would not be taken down after being placed under the hammer, and that the highest bid would be accepted. Construed in the light of the context the words, ''the purchaser makes the price, the owner makes the deed,'' are a mere slogan confirmatory of the character of the sale, and can not be regarded as a guarantee that a good and sufficient deed would be made. Not only so, but the parties did not rely solely on Clarke's memorandum of the sale, but immediately after the sale executed a written contract by which the purchasers agreed to carry out the terms of the sale as to the payment of the purchase price, and the vendor obligated himself to deliver possession and a general warranty deed on March 1, 1922.

But the point is made that independent of any guarantee Carke is liable as a stakeholder because the vendor failed to make a conveyance. The rule that an auctioneer is liable as a stakeholder to the purchaser for money paid as a deposit according to the terms of the sale if the vendor refuses or fails to complete the conveyance may be conceded, Teaffe v. Simmons, 93 Mass. (11 Allen) 342; Ellison v. Kerr, 86 Ill. 427, 2 R. C. L. 1153, 6 C. J. 843, but no such case is presented. The money was not paid by the purchasers to Clarke as a desposit or at all. On the contrary the check was made to the vendor to meet the first payment required by the written contract of sale, and the contract acknowledged the receipt thereof by the vendor. It is true that the vendor then indorsed the check and delivered it to Clarke, but it was not delivered as a deposit on behalf of the purchasers, but in discharge of the vendor's ogligation to pay Clarke at the conclusion of the sale 15% of the purchase price of the property. If the vendor had indorsed the check to some other creditor the latter would not have been liable, and the mere fact that it was indorsed to Clarke to pay for his services in making the sale is not of such consequence

as to require the application of a different rule. It follows that the case pleaded was not proved and the court did not err in directing a verdict for appellee.

There is the further contention that the court should have sustained appellants' motion for further time to prepare an amended petition in accordance with the evidence, alleging that at the time of the sale defendant knew that the property sold to the plaintiffs was encumbered by a lien in excess of their bid and that the defendant directed the plaintiffs to make check payable to R. S. Brooke with the fraudulent intent of relieving himself of liability as auctioneer and appropriating their money to his own use. This motion was not made until after the case had been tried on other issues, the evidence had been heard and the motion for a peremptory was under consideration by the court. The amended petition which it was proposed to prepare and file did not conform to the proof, and the court did not abuse a sound discretion in refusing to permit appellant to retry the case on an entirely different theory.

Judgment affirmed.